# Lehman, Durr & Co. *v.* Shackleford *et al.*

*Trover for Conversion of Cotton Bales.*

50  437
133  493

1. *What constitutes a trespass.* — Peaceable entry on rented lands in the possession of a sub-tenant, by a person to whom the rent notes of the tenant have been transferred, for the purpose of securing or arranging payment of the notes by the sub-tenant, is not a trespass, although the notes are not due at the time, and the party entering has no legal process.

2. *What constitutes duress.* — Threats of attaching a tenant's crop for the payment of rent, made by a person who has entered for the purpose of collecting or securing the rent before its maturity, and who is accompanied by a constable, but has no legal process, do not constitute duress.

3. *When misrepresentations constitute fraud.* — Generally, a misrepresentation as to a matter of law is not a fraud, in the absence of special circumstances, or peculiar relations of trust and confidence between the parties; but a misrepresentation by the holder of a tenant's notes for the rent of land, as to his legal right in respect to the crop grown on the land, made to a sub-tenant, who was ignorant of the terms of the contract between the tenant and his landlord, and by which he was induced to surrender a legal right, would be a misrepresentation as to a matter of fact, and would constitute a fraud.

[Lehman v. Shackleford.]

APPEAL from the Circuit Court of Montgomery.
Tried before the Hon. JAMES Q. SMITH.

SAYRE & GRAVES, for the appellants.

SANFORD & MOSES, *contra*.

B. F. SAFFOLD, J. — The appellants were sued by the
appellees, in trover, for the conversion of two bales of cotton.
Their defence was, that the cotton belonged to Marx, who
stored it with them, and held their receipt.

About the middle of October, 1871, Marx went upon prem-
ises which were in the possession of the plaintiffs as tenants of
Basil, who was himself a lessee. He hired a person to go with
him, and his purpose was to get cotton from the plaintiffs.
According to their testimony, he represented to them that he
held Basil's notes for the rent of the land for that year, and
had brought the sheriff with him, pointing to the person who
accompanied him, to seize their stock and crop, unless they
would give up to him two bales of cotton; the other person,
at the time, putting his hand in his pocket, as if to take out a
paper.   Under these circumstances, the plaintiffs gave up the
cotton, but followed Marx to Montgomery, and demanded it
of the defendants, with whom it had been immediately stored.

The defendants' testimony tends to prove, that while a per-
son, who was really a constable, accompanied Marx, the latter
used no other inducement to get the cotton than simply to rep-
resent to the plaintiffs that he held Basil's notes, for the pay-
ment of which their cotton was liable; that he had settled with
other tenants on the same plantation, and would be content
with three bales from them.   After consultation amongst
themselves, they agreed to let him have two bales.   Under
this consent, he carried the two bales to Montgomery the next
morning; the plaintiffs following the wagon, and making the
demand above mentioned.   It was shown that Basil's notes
were due November 1st, 1871.

The court charged the jury: 1st, that as the rent was not
due when Marx went on the plantation, if he had no legal
process to enforce the collection of rent, he was a trespasser;
and 2d, that the delivery of the cotton to him was not binding
on the plaintiffs, if it was induced by threats, or misrepresenta-
tions made by him, as to the legal rights of himself and them.

1. The first charge is erroneous.   Marx was certainly not a
trespasser, if the defendant's testimony gives the true account
of the matter.   It is not a trespass to visit a person peaceably
on business between the parties.

2. As to the second charge, there is nothing in the testi-

mony tending to show duress, which relates to fear of imprisonment, mayhem, loss of life, or of member. Menacing to commit a battery, or to burn one's house, or to spoil his goods, is not sufficient to avoid his act. For, if he should suffer what is threatened, he may sue and recover damages in proportion to the injury done him. Bacon's Abridg. *Duress.*

3. Fraud, when material to the transaction, and productive of actual injury, will vitiate consent given under its influence. What it is, the common law not only does not define, but, perhaps, asserts as a principle, that there shall be no definition. 2 Parsons on Contracts, 264–270. Generally it relates to facts, and not to opinions, or assertions of what the law is, except in cases of peculiar trust and confidence ; though, in *Townsend & Milliken* v. *Cowles* (31 Ala. 428), it is said, that an advantage, gained by a false statement of the law, made by one who knows what the law is, and that the other party is ignorant of it, and is relying upon his statement, will constitute fraud. This latter doctrine would depend for its application on the ignorance of plain and settled law, and the indisputable character of the right yielded. *Naylor* v. *Winch*, 1 Sim. & Stu. R. 564. If the plaintiffs were ignorant of the terms of Basil's contract with his lessor, and on that account were deceived by Marx's declarations of his legal rights into surrendering their cotton, it would be a clear case of *suppressio veri* on the part of Marx, in respect to facts, and, consequently, such a fraud as would intercept the passage of the title to him.

The judgment is reversed, and the cause remanded.