JUDGE ELLIOTT
delivered the opinion or the court.
It appears from the pleading and proof in this cause that appellee, who was not worth any thing more than was exempt by law from his debts, became indebted to the appellant over $100. Appellant sued appellee on this claim, and obtained judgment, and an execution in his favor was returned “no property found.”
Appellee was the owner of one horse and a small wagon, and was engaged in the purchase of produce in the country and its sale in Bowling Green, the place of his residence, and by this means was making an honest effort to support a wife and several children.
The appellee, some time after the return of appellant’s execution against him, met a man by the name of E. M. Rush, and informed Rush that he wished to make sale of his horse, in order to increase his capital on which to trade, and Rush told him he would purchase at a fair price. The price asked was $140, which was not objected to particularly by Rush; but as a desire was expressed by him to see the horse before closing the trade, the same was postponed, and he and appellee parted.
Soon after this Rush went to see appellant, and told him that appellee had offered to him his horse, whereupon appellant informed Rush of his judgment debt against appellee, and asked him to save his debt in the purchase of the horse. It was then agreed between Rush and appellant that they should go to Bowling Green on the day appellee was again to be approached by Rush on the subject of the purchase of *500 the horse, and appellant was to assign to Rush his judgment against appellee, and appellant and Rush were to get possession of appellee’s horse under the pretense that appellee was to get $140 for it in money, and then refuse to pay for the horse unless appellee received appellant’s judgment debt in part satisfaction of the price.
Under this arrangement Rush and appellant met in Bowling Green, and Rush took possession of the appellee’s horse under pretense that he wished to test its riding qualities, and rode it into a livery-stable in Bowling Green, and informed the appellee that he was pleased with the horse, and he would give him his price for it. The appellee had asked Rush $140 in money down, and Rush had told him he would give it if pleased with the horse, and appellee, by invitation, went into the office of the livery-stable to close the contract, and, as he supposed, receive the money, when Rush presented him the judgment claim of appellant, which he said belonged to him, and offered appellee the balance in money. The appellee refused to receive the claim in part payment of his horse, but told Rush that by the contract he was to receive $140 in cash. He further said that it was the only horse he had, and that it was exempt from the execution claims of his creditors, and becoming enraged he seized the bridle of his horse to take it out of the stable, and at this time appellant appeared and seized appellee’s horse by the bridle, and informed him that in order to repossess his own horse he must pay his debt. About this time the owner of the livery-stable came in, and Rush told him that he had placed the horse in his stable, and if it was taken out without his consent he would sue him, and the owner of the stable refused to deliver to appellee the horse. It appears that appellee was greatly confused, and said his family would starve unless he could get his horse; and in his agitation and excitement he appealed to a lawyer in whom he had confidence for advice, but the lawyer informed him that *501 he had, as attorney, obtained appellant’s judgment against him, and could give him no advice. He then appealed to the lawyer to go his security for the debt, which was refused; and in this state of mind he went back to the livery-stable, and being informed that he could get his horse by the execution of a mortgage on the horse for appellant’s claim, he executed a note to appellant for about thirty or forty dollars more than his judgment debt, and then executed a mortgage on his horse for its payment. And this court is asked to sanctify all this deceit, fraud, and force by a reversal of the judgment of the lower court dismissing appellant’s suit for a foreclosure of the mortgage.
It is laid down as a general rule of law that all contracts made where there is duress of the person may be avoided; but although a contract made by one in personal duress may be avoided, still it is not every duress of goods that will avoid a contract.
In the case of Spaids v. Barrett (11 American Reports, p. 10) the defendant seized oysters, the property of the plaintiff, and held them until the plaintiff agreed to settle his demand and then execute a writing releasing the defendant from the consequence of his illegal seizure of the property; and the court held that the release could be avoided by the plaintiff, and damages recovered from the defendant, for the illegal taking of plaintiff’s property, and also for any injury done to the property while in his possession; and it is said in this case that “ consent is the essence of all contracts; without it there may be the shadoAv, but not the substance.”
In speaking of the release which the plaintiff was compelled to execute in that case, the court says: “ Money paid as the only means to recover the possession of property to which the party is entitled, or money paid to recover the possession of goods Avhere wrongfully taken, may be recovered back.” (Stephen’s Nisi Prius, p. 1358; Chase v. Dromal, 7 Greenl. *502 134; Oates v. Hudson, 6 Exch. 346; Nelson v. Suddarth, 1 Hen. & Munf. 350.)
“ If money could be recovered back under the circumstances, why is not .the release void? It was not obtained with the consent intended by the law. Property had been, by fraud, perjury, and extortion, wrongfully taken. The party having possession refused to surrender on payment of the actual indebtedness, but demanded more than double the sum due, and in addition thereto a release for all damages for the wrongful acts, for the malicious violation of right and law. It would be a scandal to a court of justice if a release given under such circumstances could not be avoided.”
In Fashay v. Ferguson (5 Hill, 158) Bronson, Justice, said: “ I entertain no doubt that a contract procured by threats or the destruction of property may be avoided on the ground of duress.” And in Spaids v. Barrett (57 Illinois, 289) the court substantially held that there was no difference between the rule of law that held that a contract might be avoided by reason of duress of the person when entered into, and the one that avoided a contract for duress of the goods of the person entering into it, because the court says that in either the contract is not voluntary, but made through compulsion.
In this case the appellant and Rush by their own admission entered into a fraudulent agreement to get possession of appellee’s horse, and then hold it until appellee either paid or secured the claim held by appellant against him. This agreement was carried out, and the horse of appellee obtained by fraud and held by force till appellee not only executed a mortgage and note for what he owed appellant, but for some thirty or forty dollars more than he owed.
We are of opinion that the entire contract was obtained by force, and was tainted with fraud, and therefore void, as was held by the lower court, and the judgment is therefore affirmed.