# Glass & Co. v. Haygood.

*Bill in Equity to concel Mortgage on account of Duress.*

1. *Duress of goods; when party entitled to cancellation of contract.*
   When the possession of one's goods is unlawfully held against
   him, and he has such an important, urgent and immediate
   occasion for their possession and use as can not be subserved
   by a resort to the courts to recover them, he may avoid any
   contract he enters into with the wrongdoer, in order to re-
   gain possession of his goods; the duress of the goods under
   such circumstances rendering the contract invalid.

APPEAL from the Chancery Court of Montgomery.
Heard before the Hon. W. L. PARKS.

The bill in this case was filed on June 12, 1900, by
the appellants, C. R. Glass & Co., against the appellee,
J. C. Haygood. The bill averred that the complainants,
a partnership, were engaged in the business of conduct-
ing a public laundry in the city of Montgomery; that
for the necessary conduct of its business they owned and
were compelled to keep several horses and wagons for
the purpose of carrying the clothes of their customers
to and from the laundry; that it was especially neces-
sary that said horses and wagon should be at the use
of complainants, and this was well known to defendant;
that the defendant had kept for some time their horses
and wagons at the livery stable owned and operated by
the defendant; that on the morning of Monday, the 14th
day of May, 1900, the employees of complainant, as
was their custom and duty, went to the livery stable of
the defendant to get the horses and wagons for the pur-
pose of collecting from the customers of the complain-
ant the clothing to be laundered; that the defendant
refused to permit the employees of the complainant to
get said horses and wagons, claiming that he held them
for a debt which he alleged to be due from the com-
plainant for the board of said horses; that one of the
members of the complainant partnership protested with
the defendant against the claim of the indebtedness and

stated to the defendant that he did not owe more than $25, which he offered to pay; that the defendant refused to accept this amount, or to accept any amount, except the sum of $273.63, which was the amount the defendant claimed was due from the complainant, and would not allow the complainants to get their horses and wagons except upon the condition that said amount be paid.

The bill then averred as follows: "That the said Glass (one of the complainants) well knowing the utter insolvency of said Haygood and knowing that the business of the complainants would be ruined if they could not at once get the said horses and wagons out and sent around on their usual trips to their customers, and well knowing that complainants could not, by process known to the law, get possession of said horses and wagons in time to prevent the ruin of their business, and acting under the duress and fraud of the defendant thereupon, and on defendant's demand, paid him the sum of twenty-five dollars in cash and executed and delivered to the defendant a mortgage and two notes for the aggregate sum of two hundred and forty-eight dollars, the said mortgage being to secure the said notes and purporting to convey to the defendant said horses and wagons. One of the said notes for one hundred and twenty-five dollars is due and payable on the 14th day of June, 1900, and the other for a like sum due and payable on the 14th day of July, 1900. That the defendant is now in the possession of the said notes and has filed the said mortgage for record in the office of the probate judge of Montgomery county, Alabama. Orator aver that the said Glass, as partner in said firm, had no power to sell or mortgage any other than his own individual interest in the said horses and wagons which are the property of said partnership. And orators aver that said notes and mortgage were obtained by the defendant by fraud and duress, as aforesaid."

The complainants then averred in the bill facts going to show that after having paid the sum of $25, they were not indebted to the defendant except in the small amount of 60 cents, which they then averred they had

tendered to the defendant, but which was refused by
him.   After averring further that the defendant was
wholly insolvent and that nothing could be made out
of him by suit at law, the complainants further averred:
"That they are wholly without any legal remedy in the
premises; that unless restrained by an injunction or
other restraining order the said defendant will under-
take to seize, under the power contained in the said
mortgage, the said horses and wagons and that he threat-
ens to do this unless these complainants pay the full
amount of the face of said notes.   Complainants attach
hereto a copy of said mortgage, marked Exhibit A,
and made a part of this bill."

The complainants submitted themselves to the juris-
diction of the court, and offered to do all that the court
might in equity and good conscience require of them.
J. C. Haygood was made the sole party defendant.

The prayer of the bill was that said Haygood be en-
joined from collecting the notes and foreclosing the
mortgage given to secure them, and that the said mort-
gage and notes be required to be cancelled and deliv-
ered up.   To this bill the defendant demurred upon the
following grounds:   "1.   The said bill of complaint
does not state in what the fraud consisted.   1½.   The
bill of complaint shows on its face that C. R. Glass had
the right to mortgage the horses and wagons described
in the mortgage.   2.   The bill of complaint does not
state in what the duress consisted.   3.   The said bill
of complaint states the conclusion of the pleader.   4.
The said bill of complaint does not show how the duress
or fraud was committed, but only states that duress and
fraud was committed.   5.   The said bill of complaint
does not sufficiently state facts which constitute fraud
or duress.   6.   The bill of complaint shows upon its face
that the complainant had a remedy at law.   7.   The
bill of complaint only shows that the complainants
would have been inconvenienced, but does not show
either duress or fraud.   8.   The bill of complaint shows
that the complainant has waived any duress or fraud
by failing to take any action on the cause until too
late."   There was also a motion made to dismiss the bill
for the want of equity, and another motion made to dis-

solve the injunction for the want of equity in the bill.

On the submission of the cause upon the demurrers and motions the chancellor sustained each of them and ordered the bill dismissed and the injunction dissolved. From this decree the complainants appeal, and assign the rendition thereof as error.

GORDON MACDONALD, for appellant, cited *Ferguson v. Winslow,* 34 Minn. 384; *DeGraff v. Ramsey County,* 46 Minn. 319; *State v. Nelson,* 41 Minn. 25; *Mearkle v. Hennepin County,* 44 Minn. 546; *Oceanic S. Nav. Co. v. Tappan,* 16 Blatch. 297; *Joannin v. Ogilvie,* 15 L. R. A. 376, which cites the foregoing; *Brummagim v. Tillinghast,* 18 Cal. 265; *Radich v. Hutchins,* 95 U. S. 210; *Preston v. Boston,* 12 Pick. 7; *Dakota County Commissioners v. Parker,* 7 Minn. 267; *Frazer v. Pendleberg,* L. J. C. P. 1; *Pemberton v. Williams,* 87 Ill. 15; *Close v. Phillips,* 7 Man. and C. 586; *White v. Heylman,* 34 Pa. 142.

HILL & HILL, *contra,* cited *Davis v. Rice,* 88 Ala. 388; 10 Am. & Eng. Ency. Law (2d ed.), 337; *Lynn v. Waldo,* 36 Mich. 347; *Lynch v. Sauer,* 16 Misc. Rep. 1; *Lehman v. Shackelford,* 50 Ala. 437; *Long v. Slade,* 121 Ala. 269; *Crommelin v. McCauley,* 67 Ala. 542.

McCLELLAN, C. J.—"Whenever a conveyance or contract is obtained by actual duress, equity will grant relief, defensively or affirmatively, by cancellation, injunction, or otherwise as the circumstances may require. In determining what constitutes duress—what force or threats—equity follows the law."—2 Pomeroy's Eq. Jur., § 950. "Under the common-law rule, an act could be avoided for duress *per minas* only when the threatened danger to avoid which it was done was either loss of life, loss of a member, mayhem, or imprisonment. The avoidance of an act for duress *per minas* was said by the old authorities, still adhered to by the English courts, to have been limited to these cases because the law afforded an adequate redress for the infliction of any other injuries, and for this reason

a threat to commit any of them was insufficient ·to
overcome the will of a reasonably firm man.   *   *   *
The rule at common law, and that prevailing in Eng-
land, and probably some of the United States, is that
the unlawful detention, or the unlawful actual or
threatened seizure of a person's goods does not ordi-
narily constitute duress which will enable him to avoid
a contract made for the purpose of preventing the
seizure or of effecting their release from unlawful de-
tention."—10 Am. & Eng. Ency. Law, pp. 324, 344-5.
The foregoing are accurate statements, so far as they
profess to go, of the law except that it seems to be set-
tled in England at least that there can be no "duress
of goods" under any circumstances which will enable
the owner to avoid a contract·made to secure ·their re-
lease or immunity from unlawful seizure.   And this
view was expressed by SAFFOLD, J., harking back to
Bacon's Abridgment, in *Lehman v. Shackleford,* 50 Ala.
437, where he says: "As to the second charge, there is
nothing in the testimony tending to show duress, which
relates to fear of imprisonment, mayhem, loss of life,
or of a member.   Menacing to commit a battery, or to
burn one's house, or to spoil his goods, is not sufficient
to avoid his act.   For if he should suffer what is threat-
ened, he may sue and recover damages in proportion to
the injury done."   The ruling made might better have
been rested on the consideration that there was no evi-
dence of an unlawful seizure, nor of a threatened and
imminent unlawful seizure of the goods of the party who
did the act from the supposed consequences of which
he was seeking to shield himself on the ground that he
acted under duress; and therefore what we have quoted
from the opinion is in the nature of a *dictum.*   We
have not been referred to and we are not aware of any
other Alabama case which by way of *dicta* or otherwise
tends to support the strict English rule.   And it is laid
down in the Encyclopedia that "In the United States
there is one universally recognized exception to the old
common-law rule.   In those cases where the contract
may be made to prevent the impending destruction of
the property, and no ready and adequate redress may be
had if the impending destruction is consummated, the

contract may be avoided for duress."—10 Am. & Eng. Ency. Law, p. 345. Among the cases cited by this text, is that of *Foshay v. Ferguson*, 5 Hill (N. Y.), 154. In that case the court, after referring to the common-law rule, said: "But Mr. Chitty very justly doubts whether such be the rule at the present day, especially in regard to so serious an injury as a threat to burn a man's house. * * * I do not intend to say that a man can avoid his contract on the ground that it was procured by an illegal distress of goods; but I entertain no doubt that a contract procured by threats and the fear of battery, or the destruction of property, may be avoided on the ground of duress. There is nothing but the form of a contract in such a case, without the substance. It wants the voluntary assent of the party to be bound by it. And why should the wrongdoer derive an advantage from his tortious act? No good reason can be assigned for upholding such a transaction." So in *Spaids v. Barrett*, 57 Ill. 289, s. c. 11 Am. Rep. 10, the goods were oysters, which being of a perishable nature required special care. They were wrongfully taken and kept from the owner by means of a writ of attachment fraudulently obtained, and the person detaining them refused to surrender them unless an amount greatly in excess of what the owner owed to him was paid, exacting also from the owner a release of all damages which might have been sustained by the wrongful attachment; and where the owner in order to obtain possession of the oysters, paid the sum demanded and executed such release, the court held in an action for wrongfully suing out the attachment that the release might be avoided for duress. Other cases and texts have carried the doctrine of duress of goods still further. Thus the Supreme Court of Michigan, by COOLEY, J., has declared that duress of goods may exist when one is compelled to an illegal exaction in order to obtain them from one who has them and refuses to surrender them unless the exaction is endured, and that where the exaction is the making of a contract, the contract may be avoided.—*Hackley v. Headley*, (45 Mich. 569); and the same rule is laid down in Cooley on Torts, 506-7, as

follows: "Duress is either of the person or of the goods of the party. * * * Duress of goods consists in seizing by force or withholding from the party entitled to it the possession of personal property, and extorting something as the condition for its release, or in demanding and taking personal property under color of legal authority, which, in fact, is either void or for some other reason does not justify the demand." So in Georgia it is held that, "The seizure of property by force, and holding it until the owner executes promissory notes for its release, without the semblance of a consideration, is a species of duress, and a court of equity will relieve the maker by preventing a collection of the notes."—*Crawford v. Cato,* 22 Ga. 594. The Supreme Court of Florida, following and reiterating the doctrine as declared by Judge COOLEY, says further: "The authorities are abundant in support of the proposition that where a party has possession and control of the goods of another and refuses to surrender them except upon compliance with an unlawful demand, and there is no other speedy way left the owner of extracting them and saving himself from irreparable injury, but by paying money or giving a note, his doing so will be regarded as done under compulsion."—*Fuller v. Roberts,* 35 Fla. 110. The Court of Appeals of Kentucky also holds that there may be duress of goods which will avoid a note and mortgage executed by the owner to recover possession unlawfully withheld. The case was this: A creditor fraudulently obtained possession of his debtor's horse, and by refusing to surrender possession compelled him to execute a note for thirty or forty dollars more than was owed, and to execute a mortgage on the horse to secure the payment of the note. The creditor in due time filed a petition to foreclose said mortgage, and relief was denied on the ground that the execution of the paper had been secured by duress of the mortgagor's goods, and that it was, therefore, void. The creditor resorted to deceit and trickery in obtaining the possession of the horse, and having reference to this, something is said in the case about *fraud;* but such fraud only operated in the case by way of emphasizing the unlawful character of the creditor's pos-

session, so that the case was decided in reality solely upon the ground that the defendant in the foreclosure proceeding was forced to sign the mortgage by duress of his goods. The court said: "In *Spaids v. Barrett,* (57 Illinois, 289), the court substantially held that there was no difference between the rule of law that held a contract might be avoided by reason of the duress of the person when entered into, and the one that avoided a contract for duress of the goods of the person entering into it, because the court says that in either the contract is not voluntary, but made through compulsion," and upon the authority of that case and *Foshay v. Ferguson, supra,* the Kentucky court concludes with respect to the case before it: "We are of opinion that the entire contract was obtained by force, and was tainted with fraud, and therefore void."—*Lightfoot v. Wallis,* 12 Bush, 498. The St. Louis Court of Appeals announces the same principle thus: "The rule now is that duress in its legal sense exists when there is an arrest of the person or seizure of the goods, or a threat or attempt to do one or the other.—*Clafin v. McDonough,* 33 Mo. 412; *Vyne v. Glenn,* 41 Mich. 112; *Fout v. Geraldin,* 64 Mo. App. 165. Defendant attempted to show that the mules belonged to him; that Black had no authority to dispose of them; that the plaintiff refused on demand to give them up, and that he, defendant * * * signed the note in order to get possession of them. If such are the facts, it must be held that he signed the note under duress; for duress of goods exists when the owner is compelled to submit to an extortion in order to obtain possession of them from one who detains them without lawful right or excuse."—*Wilkerson v. Hood,* 65 Mo. App. 491. And to the same effect the doctrine has been declared by the Supreme Court of Indiana: "No recovery can be had upon a note which the maker was induced to give either by duress of his person or to regain possession of his property unlawfully withheld. 'A contract made by a party under compulsion is void; because consent is of the essence of the contract, and when there is compulsion there is no consent, for this must be voluntary.'—1 Pars. Con. (5th ed.) 392, After

noticing the English law of duress the same author
lays down this general principle: 'These distinctions,
however, would not now probably have a controlling
power in this country; but where the threat whether of
mischief to the person, or the property, or the good
name, was of sufficient importance to destroy the threat-
ened party's freedom, the law would not enforce any
contract which he might be induced by such means to
make.' "—*Bennett v. Ford,* 47 Ind. 264. And so in
South Carolina: "Duress of goods, or of negroes, is a
good plea to a bond given to procure their release," etc.
*Collins r. Westbury,* 2 Bay, 211. In Texas it is held
that "a contract made in order to regain possession of
property unlawfully detained may be avoided on the
ground of duress," the Supreme Court after referring
to the English rule, continuing: "But at an early day a
contrary ruling was made in this country. In 1797
the Supreme Court of South Carolina, in the case of
*Sarportas r. Jennings,* 1 Bay, 470, held that a contract
made in order to obtain possession of goods unlawfully
detained could not be enforced. In *Collins v. Westbury,*
2 Bay, 211, the same court reaffirmed the doctrine. Since
that time the doctrine has frequently been applied in
numerous decisions in our State courts. * * * The
weight of American authority is in favor of the doctrine
that detention of goods under certain circumstances
may constitute duress, and we think it is in accordance
with the better reason."—*Oliphant v. Markham,* 79
Tex. 543; s. c. 23 Am. St. Rep. 263.

Some of the cases above referred to take no note of
a distinction in England and in some of the United
States between cases where *money is paid* to secure
possession of goods unlawfully withheld from the own-
er, and cases where a note or other form of obligation
is given by the owner to regain possession of goods so
detained. This is not surprising. When the matter is
attentively examined, the wonder is, not that these
courts have taken no heed of such supposed distinction,
but that any court ever did. In the former class of
cases all the courts, English and American, hold that
money so paid may be recovered in an action of *indebit-*

*atus* assumpsit proceeding on the theory that the payment is *involuntary,* as the English courts seems to make a point of expressing it, or under *duress of goods,* as it really is, whether expressed by the word "involuntary" or not, and as the American courts generally express it. And we are utterly unable to conceive any ground for allowing recovery of money so paid, which would not upon every consideration possible of obtainment in the premises, go in the same degree to support a defense to a note or other contract entered into to regain possession of goods unlawfully withheld. For example: A. unlawfully withholds the goods of B. He proposes to B. to surrender the possession if B. will either pay him one hundred dollars or will execute to him a promissory note at one day for that sum. If B. elects to pay the money all the cases hold that he may recover it back, the English courts on the ground that the payment was *involuntary,* the American because it was made under *duress.* But if B. elects to execute his note, he can, according to the English cases, be made to pay the one hundred dollars on the next day, because the note was not made under duress, but *voluntarily.* It is to us an impossibility to comprehend this distinction. And when we go to the statement of the alleged grounds attempted by some English judges, we are but confirmed and reassured that it does not and cannot exist at all. The case of *Atlee v. Backhouse,* 3 M. & W. 632, is generally cited and put forward as stating the grounds upon which the English courts deny the analogy between money paid and a contract made to obtain the release of goods wrongfully withheld. That was decided by the Court of Exchequer, composed of five judges. Four of the five made deliverances. The chief baron, Lord ARINGER, seems to go upon the theory that unless goods wrongfully seized are seized *for the purpose* of enforcing the payment of money, money paid for their release cannot be recovered back, and that in the case in hand the seizure was not made for the purpose of enforcing the payment of money. It requires no argument to demonstrate that this is not and never was the law: It is wholly immaterial what ac-

tuates the unlawful seizure of another's property. And
if it had been the law, it would have had no application
in that case because the seizure was made to enforce
the payment of penalties claimed to have been incurred
by the owner under the excise laws.  Barons BOLLAND
and GURNEY did not touch upon the question we have
in hand; and it was thus left to Baron PARKE to set
forth the distinction in question and the reasons for it.
And thus he went about it: "There is no doubt of the
proposition laid down by Mr. Erle, that if goods are
wrongfully taken, and a sum of money is paid, simply
for the purpose of obtaining possession of those goods
again, without any agreement at all, especially if it be
paid under protest, that money can be recovered back;
not on the ground of *duress,* because I think that the
law is clear, although there is some case in Viner's
Abridgment to the contrary, that, in order to avoid a
contract by reason of duress, it must be duress of a
man's person, not of his goods; and it is so laid down
in Sheppard's Touchstone, (p. 61)—but the ground is
that it is not a voluntary payment.  If my goods have
been wrongfully detained, and I pay money simply to
obtain them again, that being paid under a species of
duress or constraint, may be recovered back; but if
while my goods are in possession of another person, I
make a binding agreement to pay a certain sum of
money, and to receive them back, that cannot be avoid-
ed on the ground of duress."  The lameness and impot-
ency of this statement is painfully obvious.  In it the
learned judge assumes the validity of the contract which
was the question and the only question litigated in the
case.  Of course, if one to recover the possession of his
goods unlawfully withheld makes a *binding* contract,
why the contract *is* binding—that's all; and there is
an end of his suit, brought on the theory that the con-
tract is *not* binding.  But this assumption of the judge
is a minor and perhaps an inadvertent infirmity in his
argument.  In other respects it is inconsistent and self-
contradictory on its face, and essentially so in law. He
declares that such payment is not a payment under
duress at all, but that it is a payment under a *species
of duress.*  We are not aware that there are different

species of duress apportionable to this and to that act into which a party is illegally coerced, or that that sort of duress which constrains a party to pay money to recover his goods is a different sort of duress from that which constrains him to promise to pay money to recover his goods. We have had and now have the notion that anything done by one party which illegally constrains the other to an act against that other's will is duress; and to say that an act is not avoided by duress but is avoided because it is not *voluntarily* done, is a patent contradiction in terms. The learned judge while undertaking to declare that a payment of money under the circumstances named is not a payment made upon duress of goods, has in fact declared that it is a payment under duress, and for that reason recoverable. All the American courts dealing with this subject have put the ground of such recovery expressly upon duress, actual or threatened, of goods, this court among them (*Baisler v. Athens*, 66 Ala. 194) ; and there is no other ground upon which it can be rested. This doctrine of recovery of money paid under duress being thoroughly established and proceeding upon a principle which palpably applies fully as well and cogently to contracts made upon duress of goods, cannot logically be excluded from application to such contracts. The Supreme Court of Pennsylvania after adverting to the well established right to recover back money paid under duress of goods, proceeds: "If, therefore, such be the case, where the money has been actually paid, *a fortiori* is such a defense available in an action upon a promissory note extorted from the owner of goods unlawfully withheld to obtain possession of them."—*White v. Heylman*, 34 Pa. St. 142, 145. We fully approve the language of Judge GAINES in *Oliphant v. Markham, supra*: "Notwithstanding the doctrine of the English courts [that there is no such thing as duress of goods], it is well settled by them that money paid in order to get possession of goods unlawfully detained may be recovered back. The two rules recognized by the courts of England, it seems to us, lead to an obvious absurdity; that is to say, when one pays money in order to obtain

possession of his goods unlawfully obtained by another, he may recover it back; but if he gives his note under the same circumstances and for the same purpose he cannot resist its payment."—79 Texas, 543.

The exigencies of this case do not require us to decide whether in all cases where a contract is made to recover possession of goods unlawfully withheld from the owner, such contract may be avoided for duress. But upon the authorities and considerations to which we have adverted, we do hold, confining ourselves to the case before us, that when the possession of one's goods is unlawfully held against him, and he has such an important, urgent and immediate occasion for their possession and use as cannot be subserved by a resort to the courts to recover them—"such an immediate want of his goods, that an action of trover [or detinue] would not do his business."—*Astley v. Reynolds*, 2 Strange, 916—he may avoid any contract he enters into with the wrongdoer in order to regain possession of them. The bill of complaint brings this case within this ruling. It shows an equity in the complainants to have the note and mortgage executed by them to the respondent to regain possession of their horses and wagons, cancelled and avoided; and the chancellor erred in dismissing it for want of equity. The bill is perhaps faulty in some respects—as, for instance, in not positively averring with more particularity the immediate injury that would have ensued to complainants' business from the longer detention of their property by the respondent—but it is not open to any of the objections taken by the demurrer. That should have been overruled.

The decree of the chancery court is reversed, and a decree will be here entered overruling the demurrers and denying the motion to dismiss for want of equity.

Reversed and rendered.