37 So.2d 239

### THORNTON v. SINGER SEWING MACH. CO.

7 Div. 956.

Court of Appeals of Alabama.
Oct. 19, 1948.

L. B. Rainey, of Gadsden, for appellant.

Lusk, Swann & Burns, of Gadsden, for appellee.

HARWOOD, Judge.

This is an appeal from a judgment by the court below in favor of the defendant below, appellee here.

As filed the complaint contained two counts, the first count sounding in indebitatus assumpsit and claimed $513.74 received by the defendant to the use of the plaintiff. Demurrers were sustained to the second count, and the complaint was amended by adding count three, which is as follows:

"Plaintiff claims of the defendant damages in the sum of $513.74 for breach of a contract in writing in this, viz: That theretofore on, to-wit: October 20th, 1946, the defendant agreed to deliver to the plaintiff four sewing machines, to-wit: sewing machines Nos. AG–488269, W–978122, W–977646, W–977906, and plaintiff avers that he paid to defendant the sum of $513.74 for the aforesaid sewing machines which defendant agreed to deliver to the plaintiff immediately, and plaintiff avers that defendant failed or refused to deliver to him the aforesaid sewing machines."

The pleading was thereafter in short by consent of the parties.

The tendency of the evidence for the plaintiff below shows that on 20 May 1946 a written conditional sales contract was entered into between the plaintiff and defendant, by which the plaintiff acknowledged he had received certain machinery from the defendant. Among these machines were "11 first class 400 W–1 Machines" including those listed in count 3, above, and also "1 class 69–26 Machine No. AG—488269, which is also described in count 3. Much other machinery and parts were conveyed by the contract.

The contract provided that the price of all the machinery covered by it was $2812.-90, of which $928.35 was to be paid on the date of the contract, and the balance in five substantially equal installments of from $373.20 to $380.62, payable on the 20th days of June, July, August, September, and October, 1946, respectively.

Payment of the $928.35, and the supplemental payments were admitted by the defendant.

The plaintiff testified that the machines described in count 3 were never actually received by him, and in support of this claim he introduced the following letters written to him, or forwarded to him, by the defendant company on the dates shown:

"February 15, 1947.
"Mr. W. D. Thornton
"Tawanah Mfg. Company,
"Glencoe, Alabama

"Dear sir:

"In accordance with our understanding of several days ago, we have entered claim with the Railway Express Agency, Atlanta, Georgia for $513.75 to cover three 400W1 and one 69–26 machines which went astray in our shipment from Atlanta on October 29, 1945.

"If we are successful in collecting from the Transportation Company, we will apply the proceeds of the claim to your current account as requested.

"Please bear in mind, however, that due to the time that has transpired since the shipment was made, there is a possibility that Interstate Commerce regulations will hold the Transportation Company not liable and due to your not having informed us of this shortage at an earlier date, you stand to lose the entire amount mentioned above.

"You may be assured, however, of our fullest cooperation in endeavoring to effect collection of this claim in your behalf.

"Very truly yours
"Singer Sewing Machine Company
"(Signed)  H. C. Ernest
"Assistant to General Agent."

164

"February 15, 1947.

"Railway Express Agency
  "325 Mitchell St., S.W.
  "Atlanta, Georgia.

"Gentlemen:

"Attention: Mr. A. D. Satterwhite, Supt.
"Re Tawanah Mfg., Co., Glencoe (Gads-
    den) Alabama from Singer Sewing
    Machine Co., Atlanta, Ga., October
    29, 1946, Col. Rec. 876504

"Reference is made to our letter of May 28, 1946 wherein we advised you that the subject consignee claimed to have received only one carton in the shipment consisting of four cartons and one box of sewing machine heads and your reply of June 26, 1946 stating that four pieces checked short in the subject shipment.

"As requested in your letter of June 26, 1946, we made a further investigation but the consignee delayed until this time advising us definitely that the four machines were not delivered. Under the circumstances, we have no alternative but to request reimbursement from you in the full amount of the shortage and, therefore, submit the following papers to support our claim:

"1. Photostat of original sales order

"2. Photostat of original express receipt indicating that a driver named Garner picked up five pieces at 2:00 P.M. on October 29, 1945.

"3. Photostat of our invoice No. 108143 covering our charge to the consignee of the missing equipment.

"4. Photostat of our letter of May 28, 1946 wherein we first advised you concerning the shortage.

"5. Photostat of your letter of June 26, 1946 wherein the shortages were acknowledged by your firm and that it would be in order for us to submit claim in the usual manner.

"6. Our invoice dated February 12, 1947 charging the four machines to you in the amount of $513.75

"We await with interest your reply in this matter.
    "Very truly yours,
      "Singer Sewing Machine Company
      "Assistant to General Agent.

"September 12, 1947.

"Mr. W. D. Thornton
  "Tewanah Mfg. Co.
  "Glencoe, Alabama.

"Dear Sir:

"Reference is made to your letter of September 4, 1947 and our reply of September 6, 1947 concerning the claim filed with Railway Express Agency.

"We are just in receipt of a letter dated September 11, 1947, from Railway Express Agency informing us that in view of the fact the claim was not presented until February 15, 1947 and paragraph seven of their Uniform contract specifically states that all claims filed must be presented within nine months and fifteen days, they will not entertain the claim at this late date.

"In view of the fact that you wrote us on August 3, 1946 advising us that the machines had been received and then waited until early this year to inform us that you were in error, it would seem that your firm is responsible for this loss.

"Sincerely regretting this unfortunate incident, we are
    "Very truly yours,
      "Singer Sewing Machine Company
        "(Signed) H. C. Ernest
      "Assistant to General Agent."

On cross examination the plaintiff testified he had made the payments on this contract as called for by the contract, and that he had never sent to the defendant company the amount of $513.74 as a payment on the contract.

For the defendant the evidence tended to show that on 24 May 1946 the plaintiff wrote to the defendant the following letter:

"Singer Sewing Machine Company
  "172-A Trinity Ave. S. W.
  "Atlanta, Georgia.

"Gentlemen:

"We have your letter of May 15th, with reference to the serial numbers of the 400W-1 machines shipped to us during the past several months. Those numbers are as follows: W977086; W977060; W991716; W977890; W976856; W974372; W976872; W991732.

"It seems that I errored in counting these machines on the day Mr. Turner was

last here and we have only eight instead of nine.

. "I note also on the list Mr. Turner left with me a class 69–26 Machine. We have never received this machine.

"As a possible clue to the whereabouts of some of the above we received last week a Uniform Straight Bill of Lading No. 2826 from Bridgeport, Conn., Consigned to us three cartons of Sewing Machine Heads, Weight 180 pounds and one carton of parts 15 pounds. We have not received this shipment as of this date.

"Very truly yours,
          "(Signed)   W. D. Thorton
          "Tawanah Mfg. Co."

Defendant introduced defendant's letter in reply to the letter immediately above set out, which was as follows:

                          "July 24, 1946.
                          "Up Date
"Tawanah Mfg. Co.
"Glencoe, Alabama.
"Gentlemen:

"We would appreciate your advising if three 400W1 and one class 69–26 machines which checked short in our factory's recent shipment to you have been received at this time.

"Very Truly yours
  "Singer Sewing Machine Company
  "Jos. C. Lewis, General Agent
  "F. R. Barford."

After plaintiff stated that the machines referred to in these letters were the ones which are the bases of this suit, the defendant then introduced the following letter written by the plaintiff to the defendant:

"Tawanah Manufacturing Company
          Glencoe          Alabama
                "8/3/46
"Singer Sewing Machine Company
  "172–A Trinity Ave., S. W.
  "Atlanta 3,
  "Georgia.
"Gentlemen:

"In compliance with your request of July 24, concerning three 400W1 and one Class 69–26, please be advised that we have received these machines.

"Very truly yours,
          "(Signed)   W. D. Thornton
          "Tawanah Mfg., Co."

On redirect examination the plaintiff offered the following letter, written to him by the defendant:

                          "September 12, 1947
"Mr. W. D. Thornton
  "Tawanah Mfg. Co.
  "Glencoe, Alabama
"Dear Sir:

"Reference is made to your letter of September 4, 1947 and our reply of September 6, 1947 concerning the claim filed with Railway Express Agency.

"We are just in receipt of a letter dated September 11, 1947 from Railway Express Agency informing us that in view of the fact the claim was not presented until February 15, 1947 and paragraph seven of their Uniform contract specifically states that all claims filed must be presented within nine months and fifteen days, they will not entertain the claim at this late date.

"In view of the fact that you wrote us on August 3, 1946 advising us that the machines had been received and then waited until early this year to inform us that you were in error, it would seem that your firm is responsible for this loss.

"Sincerely regretting this unfortunate incident, we are
      "Very truly yours
      "Singer Sewing Machine Company
          "(Signed)   H. C. Ernest
          "Assistant to General Agent."

The plaintiff also testified in connection with the letter written by him to the defendant on 3 August 1946, in which he stated that he had received four machines similar in type to ones that were missing, and he had assumed that these four machines were replacements for the missing machines.

On cross examination the plaintiff testified that each machine carries a serial number on it; that the machines that were delivered were received in his place of business, and by checking these numbers he could determine which machines they were, and if they were the ones whose numbers appeared in the conditional sale contract of which he had a copy.

Thereupon the court rendered the following judgment in favor of the defendant:

"On this the 5th day of February, 1948, come the parties by their attorneys and the issues being joined in this case, thereupon the Court proceeds to try the same without intervention of a jury, and after hearing the evidence and argument of counsel and upon due consideration of same, in the light of Standard Oil Co. of Kentucky v. Gramling, 26 Ala.App. 382, 160 So. 725 and cases therein cited, wherein the doctrine propounded is that the law aids the diligent as well as Equity. The Court considers that plaintiff by his lack of diligence became the author of his loss in this case. It is therefore ordered and adjudged by the Court that the issues in this case are in favor of the Defendant. It is further ordered and adjudged that the defendant recover judgment against the plaintiff for the costs of suit, for which let execution issue."

Thereafter the plaintiff below duly perfected his appeal to this court. Only two errors are assigned, and each one goes to the correctness of the lower court's action in rendering a judgment for the defendant below.

Clearly no evidence was presented by the plaintiff sufficient to sustain Count 3 of the complaint. No contract other than the one above set out was entered into pertaining to the four alleged missing machines. No payment of $513.74 was called for under this contract, nor had any been made. The payments that were made were made under the contract introduced in evidence, an entirely different document from that described in Count 3.

The remaining question therefore is whether, under the evidence presented, the plaintiff is entitled to recover under Count 1, indebitatus assumpsit, for money paid under mistake of fact.

It is clear from the evidence submitted that the plaintiff below knew, or should have known, whether the four machines whose alleged non delivery forms the basis of this suit had, or had not, been received by him.

After reporting the shortage of the machines to the defendant he thereafter informed the defendant on 3 August 1946 that he had received the machines. Following this he met the payments due on the conditional sale contract through each month as the same became due, the last payment being made on 20 October 1946. After this he again revived with the defendant his claim as to the four missing machines.

In Standard Oil Co. of Kentucky v. Gramling, 26 Ala.App. 382, 160 So. 725, the plaintiff had entered into a contract to operate a filling station for the defendant. Plaintiff was to receive 2¢ per gallon on each gallon of gasoline sold, and was to be responsible for all gasoline delivered to the station. At each monthly inventory there was found a shortage in the amount of gasoline delivered and that on hand. While protesting that the shortage was no fault of his own the plaintiff paid the amounts claimed due by the defendant in order to keep the contract in force. During the eight months this contract continued in force the aggregate amount of the shortage payments was about $221.00. Thereafter the plaintiff brought an action in assumpsit to recover back the amount represented by the shortage payments.

In reversing a judgment for the plaintiff this court wrote:

"Regarding the various shortages of gasoline going to make up the aggregate payment of $221 occurring during the time plaintiff was in charge of defendant's station, the plaintiff's right to recovery depends upon whether these payments were made under legal duress or whether they were voluntary payments. It is beyond dispute that at the time these payments were made plaintiff was in possession of all the facts in the case. It is equally clear that these payments were not made as a result of any legal compulsion. That being the case, such payments cannot be recovered back by reason of the mere fact that they were paid unwillingly. Singer Sewing Machine Co. v. Teasley, 198 Ala. 673, 73 So. 969; Cantonwine v. Bosch Bros., 148 Iowa 496, 127 N.W. 657."

In National Bank of Boaz v. Marshall County, 229 Ala. 369, 157 So. 444, 445, the Supreme Court enunciated the doctrine that "It is a well-settled general principle of the common law that in the absence of fraud, money paid to satisfy a colorable demand to a person who has a colorable legal right to receive it may not be recovered back in an action of indebitatus assumpsit, unless the money is paid under duress of person or goods, and the mere fact that it was paid under protest will not render it involuntary. Glass & Co. v. Haygood, 133 Ala. 489, 31 So. 973; Prichard v. Sweeney, 109 Ala. 651, 19 So. 730."

This same doctrine is enunciated in H. A. Edwards Ins. Agency et al, v. Jones, 242 Ala. 624, 7 So.2d 567, 568, wherein the Supreme Court wrote: "For the rule is well settled that a person cannot recover back money which he has voluntarily paid with full knowledge of all the facts, without fraud, duress or extortion in some form."

This cause was heard by the court without a jury. The court's conclusion, from the evidence must be accorded the effect of a jury verdict, and every presumption indulged in favor of the correctness of his conclusion

Certainly it cannot be said that the lower court was not fully justified in concluding under the evidence presented in this case that the plaintiff paid the money he now seeks to recover with full knowledge of all the facts, and entirely voluntarily.

This cause is therefore due to be affirmed, and it is so ordered.

Affirmed.