I dissent in part from the substituted opinion.
I agree with Justice Maddox's statement in his substituted majority opinion that the trial court was correct in granting a summary judgment as to Day's assertion that the underlying employment contract was void because Friedman Co. was not qualified to do business in Alabama when it was entered into. We part company, however, as to the issues of whether there was duress involved in the execution of the promissory *Page 59 
note, whether there was a parol agreement not to enforce the guaranty clause, whether Friedman owed Day money for brokerage fees and commissions, and whether Friedman willfully interfered with existing contractual relations between Day and former customers of Day. As to the foregoing issues, I would uphold the trial court's grant of summary judgment.
In order for a summary judgment to be properly granted, there must be no genuine issue of material fact in dispute, and the application of the law to the undisputed facts must be correct.Wheeler v. First Alabama Bank of Birmingham, 364 So.2d 1190
(Ala. 1978). Careful study of each of the issues named heretofore reveals that there is no dispute between the parties as to any material fact. Therefore, if the trial judge applied the law correctly, his grant of summary judgment should be upheld.
Appellant claims initially that the promissory note is unenforceable because it was executed under duress. The facts relevant to the alleged duress are not in dispute. The employment contract in effect between Day and Friedman Co. incorporated the rules of the Commodities Exchange. Those rules required that before a brokerage firm could release the license of a broker leaving its employ, any outstanding accounts between the two parties must be settled. Pursuant to this rule, the contract also contained a guaranty agreement, whereby Day agreed to be responsible for the debts incurred by his customers in their accounts. When Day resigned from Friedman 
Co., Friedman sought to enforce the rule and the contract provision, and required Day to execute a non-interest-bearing promissory note to cover the debts incurred by Day's customers and by Day personally. Day argues that these acts constitute duress sufficient to void the contract. Williston, in his treatise on contracts, states that in order to constitute duress, "[t]he alleged pressure must be wrongful." 12 S. Williston, A Treatise on the Law of Contracts § 1606 (3d ed. 1970). Furthermore,
 [A] threat to bring a civil action or to resort to remedies available under a contract is not such duress as will justify rescission of a transaction induced thereby. This is true even though it is subsequently determined that there is no legal right to enforce the claim, provided the threat is made in good faith, i.e., in the reasonable belief that a possible cause of action exists.
Id. (footnotes omitted). See, United States v. Burgreen,591 F.2d 291 (5th Cir. 1979); Lehman, Durr Co. v. Shackleford,50 Ala. 437 (1874). There was not a scintilla of evidence presented by Day that Friedman Co. had no legal right to enforce the contract or the Commodities Exchange rules, much less that they had not even a "reasonable belief that a possible cause of action exist[ed]." S. Williston, supra.
Secondly, Day contends that there was a parol agreement not to enforce the guaranty clause. Assuming, arguendo, that Alabama law would permit the introduction of such an agreement,see, Hibbett Sporting Goods Inc. v. Biernbaum, 391 So.2d 1027
(Ala. 1980), I do not agree that the conversation alluded to by Day constitutes such an agreement. Day testified in his deposition that in a conversation with Tom Ditma, an officer of Friedman Co., Ditma said in reference to the guaranty clause, "Oh, but don't bother about that, that is no problem. We are going to make, you know, lots of money. We are going to have a long career together. Forget about that, you know." After this conversation Day signed the contract and returned it to Friedman Co. Even taking Day's testimony regarding his conversation with Ditma as true, there is no showing of a parol agreement not to enforce the guaranty clause. Ditma told Day not to worry because they were "going to have a long career together," not that Friedman Co. would not enforce its contractual rights if the situation arose. I fail to see how he could have relied on these statements to his detriment.
Day asserts further that he was owed money for brokerage fees and commissions by Friedman Co. Day presented no evidence in support of this allegation. In a hearing on a motion for summary judgment, *Page 60 
failure of a party opposing the motion to offer any affidavits or other testimony to contradict evidence presented by the moving party leaves the court no alternative but to consider such evidence uncontroverted. Mims v. Louisville Title Ins.Co., 358 So.2d 1028 (Ala. 1978); Donald v. City National Bankof Dothan, 295 Ala. 320, 329 So.2d 92 (1976). Furthermore, Day testified in his deposition that he had been given credit for brokerage fees and commissions paid to Friedman Co. by Day's customers, and that he was not aware of any other payments for which he had not been given credit. I fail to see a dispute over a material fact as to this issue.
Day contends finally that Friedman Co. has unlawfully interfered with existing contractual relationships between Day and customers who "interacted with Day as an individual" and not as an employee of Friedman. Unfortunately, this issue fails to state a claim for which relief may be granted, and was properly dismissed by the trial judge in the hearing for a motion for summary judgment. Alabama law recognizes only two types of tortious interference with contractual relations. One is where an employee is enticed to leave his employment, and the other is where a party has been "procured against his will or contrary to his purpose, by coercion or fraud, to break his contract with another." Erswell v. Ford, 208 Ala. 101, 103,94 So. 67, 69 (1922). Also see, Homa-Goff Interiors, Inc. v.Cowden, 350 So.2d 1035 (Ala. 1977). Neither occurrence is involved here; therefore, the trial court was correct in granting summary judgment as to this issue.
Although summary judgments are often difficult to uphold in view of the scintilla rule, I believe that the trial court properly applied that rule to the present case. I would affirm the summary judgment, and I therefore dissent in part from the substituted opinion.
ALMON and EMBRY, JJ., concur.