## MARY E. OLIPHANT V. THOMAS W. MARKHAM.

### No. 2910.

1. **General Demurrer—Rules of Pleading.**—The demurrer being to the answer as a whole, if any part of it presented a valid defense, either in whole or in part, to the suit it was properly overruled.

2. **Dealing in Futures—Case Adhered to.**—Floyd v. Patterson, 72 Texas, 202, adhered to in holding that *dealings in futures* are contrary to public policy, and that contracts for the future delivery of stocks or produce in which it is contemplated that the commodity should not be delivered should not be enforced.

**3. Illegal Contract—Same.**—The test whether a demand connected with an illegal contract can be enforced is whether the plaintiff requires any aid from the illegal transaction to establish his case.   See example.

**4. Same.**—If Jones undertakes to advance money to Markham for use in buying futures and so advances it upon such contracts, when Jones sues for its recovery it devolves upon him to show a request to pay and the character of the contract upon which the money was advanced in order to prove the necessity of making the payments. This would bar a recovery.   So also if Jones became interested in the contracts as agent to keep them in force, his participation in the illegal contract would bar his recovery for money advanced.

**5. Duress — Illegal Withholding of Property.** — A contract made in order to obtain possession of goods unlawfully detained will not be enforced.

**6. Same.** — The maker of a promissory note given to obtain a release of property unlawfully withheld can show such fact in defense of an action upon the note.

**7. Power of Clerk or Salesman.**—A clerk or salesman in employ of a mercantile firm has not the power by virtue of his employment to pawn the assets of the firm for his own debts.

**8. Partner—Power Over Firm Property.**—Nor would one partner have power to bind assets of the firm as security for his private debts.

**9. Dealing in Futures.**—There being testimony to raise the issue it was proper to instruct the jury:   If Jones (agent of plaintiff) bought futures for Markham (defendant) and advanced money for that purpose, then this rendered the transaction (a note for the money advanced) illegal, and plaintiff can not recover.

**10. Same — Wagering Contract.** — Contracts called dealings in futures are not strictly gambling contracts, but they are in the nature of wagering agreements, and for that reason it is held contrary to public policy for the courts to enforce them.

**11. Gambling Contract.**—A wager and a gambling contract are so nearly allied that it is not at all likely the jury was mistaken in the meaning of the term gambling contract used in the charge in reference to the defense.

APPEAL from Walker.   Tried below before Hon. Norman G. Kittrell. The opinion gives a statement.

*Abercrombie & Randolph*, for appellant.—1. The court erred in overruling plaintiff's exception to T. W. Markham's amended original answer, for reasons that said amended original answer was insufficient in law and did not contain any legal or valid defense to her cause of action.   Lewis v. Alexander, 51 Texas, 591; De Leon v. Trevino, 49 Texas, 88; Boggess v. Lilly, 18 Texas, 200; Mills v. Johnston, 23 Texas, 309; Floyd v. Patterson, 72 Texas, 202; Armstrong v. Toler, 11 Wheat., 258; Faikney v. Reynous, 4 Burr., 2069; 3 Am. and Eng. Encyc. of Law, pp. 837 (note 1), 875 (note 3), 887; 8 Am. and Eng. Encyc. of Law, p. 1016, note 2; Wills. Crim. Stats., art. 354a; Camoron v. Thurmond, 56 Texas, 22; McGowen v. Bush, 17 Texas, 196; Taylor v. Hall, 71 Texas, 213; Bish. on Con., secs. 722, 724, 1108, 1109; Pfeuffer v. Maltby, 54 Texas, 454; Labbe v. Corbett, 69 Texas, 503.

2.   The facts averred in said amended answer do not show that the original transaction between plaintiff's agent, Jones, and J. S. Markham, in settlement of which it is averred the note sued on was given, was a

gambling transaction or was in violation of public policy. Boggess v. Lilly, 18 Texas, 200; Mills v. Johnston, 23 Texas, 309; Lewis v. Alexander, 51 Texas, 591; De Leon v. Trevino, 49 Texas, 88.

3. Said amended answer does not aver facts sufficient to show that said note sued on was executed under duress of property. McGowen v. Bush, 17 Texas, 196; Taylor v. Hall, 71 Texas, 313; Bish. on Con., secs. 722, 724.

4. If the averments and evidence had shown that Jones made the contracts for Markham, and became interested in them and kept up the margins, the charge as given in said paragraph would have been erroneous, for the reason that the vice in the original contract did not enter into the settlement in which the note sued on was given. Boggess v. Lilly, 18 Texas, 200; Mills v. Johnston, 23 Texas, 309; De Leon v. Trevino, 49 Texas, 88; Lewis v. Alexander, 51 Texas, 591; Floyd v. Patterson, 72 Texas, 202; Armstrong v. Toler, 11 Wheat., 258; Faikney v. Reynous, 4 Burr., 2069.

*Campbell & Ball* and *H. J. Brown*, for appellee.— 1. The court did not err in overruling plaintiff's exceptions to T. W. Markham's amended original answer, as plaintiff filed no special exception and the said amended original answer was good on general demurrer, and if the allegations therein contained were true they constituted a valid defense to plaintiff's cause of action. Seeligson v. Lewis & Williams, 65 Texas, 215; Wegner Bros. v. Biering, 65 Texas, 506; Bish. on Con., secs. 471, 476, 725, and notes; Story on Con., sec. 583; 2 Greenl. Ev., 294, note 1; Bennett v. Ford, 47 Ind., 264; Railway v. Patterson, 41 Ind., 312; 34 Pa. St., 144; Crawford v. Cato, 22 Ga., 594; Sasportas v. Jennings, 1 Bay, 470–475.

2. Appellee, T. W. Markham, in his said answer averred facts and not conclusions of law. The allegations contained therein, if true, constituted a gambling transaction to which Jones, J. S. Markham, and Floyd & Co. were all parties. Seeligson v. Lewis & Williams, 65 Texas, 215; Embry v. Jemison, Am. Dig., 1889, p. 1674; Sprague v. Warren, 1 Ct. App. C. C., sec. 566.

3. The amended answer averred that J. B. Jones, plaintiff's agent, was unlawfully in possession of the property of appellee; that he knowingly, deliberately, and without authority of law received same, and refused repeatedly to surrender same unless appellee would sign the note sued upon; that the property was that of T. W. Markham & Son and not of J. S. Markham, and that J. B. Jones knew such to be the fact; that the notes were necessary to their business, and for Jones to continue to hold same would have been disastrous. It was not incumbent on appellee to allege "that plaintiff demanded money she had no right to receive, or that plaintiff was insolvent, or that plaintiff or her agent had threatened to destroy the collaterals, or that Markham & Son were insolvent,

embarrassed, or being pressed by creditors." Prior to the execution of the note sued on the record discloses no demand due by T. W. Markham to plaintiff. Taylor v. Hall, 71 Texas, 213; Bish. on Con., sec. 725; 4 Wait's Act. and Def., sec. 491; 2 Greenl. Ev., 294, note 1; 34 Pa. St., 144; Crawford v. Cato, 22 Ga., 594; Railway v. Patterson, 41 Ind., 312; Bennett v. Ford, 47 Ind., 264; Am. and Eng. Encyc. of Law, 74, 77, 78; Sasportas v. Jennings, 1 Bay, 4^0–475.

4. If the demand against J. S. Markham could not have been enforced in a court of law prior to the execution of the note sued on, the mere change in the evidence of debt, by taking the joint note of J. S. and T. W. Markham, would not render legal that which before was illegal. The vice of the original transaction entered into and vitiated the subsequent contract. Wegner v. Biering, 65 Texas, 506; 1 Pars. on Con., 457; Story on Con., 584; Collins v. Blanton, Smith's Lead. Cases, 676.

5. If the property of appellee was under duress, money paid or a note given to secure possession of same could be recovered back or the note avoided. The appellee had the right to choose his remedy, and was not under the necessity of going to the courts for redress. Ladd v. Cotton Press Co., 53 Texas, 172; Bish. on Con., 725; Railway v. Patterson, 41 Ind., 312; 34 Pa. St., 144.

GAINES, ASSOCIATE JUSTICE.—The plaintiff sued J. S. Markham and Thomas W. Markham upon a promissory note executed by them payable to her. J. S. Markham did not answer, but Thomas W. Markham appeared and pleaded, alleging, first, that the note was given for an illegal consideration and was therefore void, and in the second place that it was executed by him under duress.

In support of the first ground of defense it was alleged that the original consideration of the note was money loaned to and advanced to J. S. Markham by one J. B. Jones, as agent for the plaintiff, under the following circumstances: J. S. Markham had entered into a contract with a firm known as S. S. Floyd & Co., nominally for the sale and delivery of cotton and wheat at stipulated prices at future dates, while in fact it was understood between the parties that nothing was to be delivered under the contract, but that at the time the contracts were nominally to be performed there was to be paid or received by the seller, as the case might be, the difference between the contract price and the market price of the commodity on the day of the performance. It was alleged that Jones well knew of the nature of the contracts and advanced to J. S. Markham, money to pay such margins as became necessary to prevent his rights under them from being forfeited. It was also averred that J. S. Markham, after the contracts were executed, transferred his interest in them to Jones; that after the transfer Jones paid two or more margins upon them,

and that the money so paid was included in the amount for which the note was executed.

The defendant, Thomas W. Markham, in the second place also alleged that in order to secure the money so advanced and paid for J. S. Markham the latter delivered to Jones certain evidences of debt, consisting of notes and accounts belonging to T. W. Markham & Son (a firm composed of the defendant, T. W. Markham, and one F. E. Markham) without authority from the firm or either member thereof; that they demanded the possession of such evidences of debt from Jones and that he refused to deliver them except upon condition that he, the defendant, would execute a note for the balance claimed to be due from J. S. Markham; that the firm of T. W. Markham & Son were merchants; that the claims were owed to them by their customers, and that their retention by Jones was ruinous to their business; and that the latter having persisted in his refusal to surrender the claims, defendant, T. W. Markham, executed the note in order to get possession of them and for no other consideration.

The plaintiff interposed a general demurrer to the answer, and the demurrer having been overruled by the court now assigns that ruling as error. The demurrer being to the pleading as a whole, if any part of the answer presented a valid defense, either in whole or in part, to the suit it was properly overruled.

The transactions under consideration took place before the passage of the statute which affixed a penalty to the business of dealing in futures (Laws of Nineteenth Legislature, 86); but it was held by this court in Floyd v. Patterson, 72 Texas, 202, that such dealings were contrary to public policy, and that contracts for the future delivery of stocks or produce in which it is contemplated that the commodity should not be delivered would not be enforced. But it does not follow that every contract which is incidentally connected with or grows out of such a transaction is tainted with its vice. In the case referred to the doctrine was recognized "that the test whether a demand connected with an illegal act can be enforced is whether the plaintiff requires any aid from the illegal transaction to establish his case."

Applying this principle, it is apparent that in so far as the answer alleges that the consideration of the note sued upon was for money loaned to the defendant J. S. Markham to pay margins upon future contracts, although with a knowledge on part of Jones of the purpose for which the money was borrowed, it presents no defense to the action. If Jones had sued J. S. Markham for the money so lent, when he had proved the loan he would have established his case, and no proof of the purpose for which the money was lent would have been required. But if Jones had undertaken to advance the margins upon the contracts and had advanced them, in order to recover the money so expended it would have been necessary to prove the necessity for making the payments, and in order to do this

he would have had to show not only the request to pay the money, but also the nature of Markham's contract which gave rise to the necessity. Besides, if Jones acted as Markham's agent in keeping the contract in force, it would seem that such a participation would render him equally as culpable as his principal. If, as the answer alleges, before the contracts between Markham and J. Floyd & Co. were closed Jones became interested in them, it is clear that he could not recover of Markham for his proportion of any loss that may have thereafter accrued.

It follows from what has been said that the answer of Thomas W. Markham sets up in part a least a good defense to the action, and that the demurrer was properly overruled. But the demurrer raises a question which it is necessary to decide before making a final determination of the appeal, and it will be discussed here. Does the answer show such a state of facts as entitled Thomas W. Markham to avoid payment of the note although it may be valid against his codefendant? Does the fact that Jones unlawfully withheld from him possession of the evidences of debt belonging to his firm, and that he executed the note solely for the purpose of regaining possession of them, authorize a holding that the execution of the note by him was compulsory? It seems to be the settled law in the English courts that the detention or threatened destruction of goods will not constitute such duress as will authorize the rescission of a contract made to regain possession of the property or to prevent its destruction.

But at an early day a contrary ruling was made in this country. In 1797 the Supreme Court of South Carolina, in the case of Sasportas v. Jennings, 1 Bay, 463, held that a contract made in order to obtain possession of goods unlawfully detained could not be enforced. In Collins v. Westbury, 2 Bay, 211, the same court reaffirmed the doctrine. That case involved, as we think, substantially the same principles which are involved in the case now before us. Since that time the doctrine has frequently been applied in numerous decisions in our State courts. White v. Heylman, 34 Pa. St., 142; Hartley v. Headly, 45 Mich., 569; Crawford v. Cato, 22 Ga., 594; Bennett v. Ford, 47 Ind., 264; Foshay v. Ferguson, 5 Hill, 254; Sparks v. Barrett, 47 Ill., 287; Thurman v. Burt, 53 Ill., 129; Nelson v. Suddarth, 1 Hen. & Mun., 350. The Supreme Court of Kentucky seems to have adhered to the English rule. Hazelrigg v. Donaldson, 2 Met., 445.

The weight of American authority is in favor of the doctrine that detention of goods under certain circumstances may constitute duress, and we think it is in accordance with the better reason. Notwithstanding the doctrine of the English courts, it is well settled by them that money paid in order to get possession of goods unlawfully detained may be recovered back. Atlee v. Backhouse, 3 M. & W., 650. The two rules recognized by the courts of England, it seems to us, lead to an obvious absurdity; that is to say, that when one pays money in order to obtain pos-

session of his goods when unlawfully detained by another he may recover it back, but if he gives his note under the same circumstances and for the same purpose he can not successfully resist its payment.

In White v. Heylman, *supra*, the Supreme Court of Pennsylvania say: "If, therefore, such be the case where money has been paid, *a fortiori* is such a defense available in an action upon a promissory note extorted in the manner alleged in the offer made by the defendant and rejected by the court." Certainly upon principle the position of a defendant who resists the payment of a note is as favorable as that of a plaintiff who instead of promising to pay has actually paid the money and seeks to enforce its recovery. It would seem that where money has been paid to obtain a release of property unlawfully withheld by the defendant, the want of consideration would be a sufficient reason why the action ought to be maintained; and upon the same principle the maker of a note given for a similar purpose ought to be able to defeat an action upon it. The opinion expressed by this court in the case of McGowen v. Bush, 17 Texas, 201, though not necessary to the decision of that case, is in accordance with the conclusions to which we have arrived upon the question now under consideration. For the reasons stated we are of the opinion that the second defense set up in the special answer presented a good defense to the suit on the note.

There are number of assignments of error based upon the court's charge, but we think that none of them are well taken. The instructions given to the jury by the court very fully and correctly presented the law of the case and of each phase of the case made by the evidence. But we will consider briefly some of the points presented by the assignments.

Paragraphs two and three of the charge are not inconsistent with each other. They merely presented different phases of the case.

We think there was no error in instructing the jury that J. S. Markham had no power to pledge the notes of T. W. Markham & Son. If he was merely the clerk or salesman and agent of the firm there could be no plausible pretence that his agency gave him the power to pawn the firm's assets for his own debts. It is not claimed that he had any special authority to do this. Whether the court held or not that there was no evidence tending to show that J. S. Markham was a partner in the firm of. T. W. Markham & Son we do not know. If it was held that he was not a partner we do not see that the holding was erroneous. T. W. Markham testified that he had promised to give him a third interest in the profits to work for the firm, but that there were no profits, and that he quit and went into other business. Subsequently the firm employed him on a salary of $50 per month. This last employment was before he had the transactions with Jones which gave rise to this suit. It is evident from this testimony that he was the mere clerk or agent of the firm when the claims which belonged to the firm were attempted to be pledged.

But if it had been shown that he was a partner we do not see that the result would have been different. A partner's interest in the partnership property is only his proportionate share of what remains after the payment of the partnership debts. He has no such distinct interest in any distinct parcel of the partnership property as enables him to pledge it for his own debts. Such interest in a part of the firm assets is too remote and indeterminate to admit of its being conveyed as a security or otherwise.

The charge of the court upon the question of duress was in accordance with the principles we have announced and was not erroneous. If not sufficiently full additional instructions should have been requested.

It is assigned that "the court erred in telling the jury 'that if they found that Jones bought futures for Markham and advanced money for that purpose, etc., then this rendered the transaction illegal, and plaintiff could not recover,' for the reason (1) that this part of the charge was contrary to law, and (2) because there were no averments or evidence to authorize such charge or to show that Jones ever bought futures for Markham."

We think that the proposition of law announced in the charge is correct, and that there was both pleading and evidence to sustain it. The only evidence bearing upon the immediate question was that of Jones and J. S. Markham. Jones testified that he did not buy futures for J. S. Markham, and J. S. Markham upon his examination in chief testified to the same effect. But upon cross-examination he admitted that sometime previous to the trial he had stated in substance that Jones acted as his agent in keeping up the contracts, and that what he then said was the more likely to be the truth. This testimony made the charge proper.

There was probably nothing in the testimony which justified the court in telling the jury that if they found "the note sued on was invalid on the ground of being a *gambling* debt, then they would find for defendant, T. W. Markham," but we do not see how it could have prejudiced the appellant. Contracts such as the defendant sought to prove are not strictly gambling contracts, but they are in the nature of wagering agreements, and for that reason it is held contrary to public policy for the courts to enforce them. A wager and a gambling contract are so nearly allied that it is not at all likely that the jury mistook the court's meaning. That meaning was made clear beyond dispute by the previous part of the charge.

The other assignments of error question the sufficiency of the evidence to support the verdict. The evidence was amply sufficient to show that T. W. Markham executed the note solely for the purpose of obtaining possession of the claims of his firm which were unlawfully withheld by Jones, and this entitled him to a verdict.

There is no error in the judgment and it is affirmed.

*Affirmed.*

Delivered February 10, 1891.