### JOHN LOVEJOY v. KAUFMAN & RUNGE ET AL.

Delivered May 19, 1897.

**Illegal Contract—Liability of Agent to Principal.**

While the law will not aid in the enforcement of illegal contracts, such as dealing in futures, yet where an agent has received money from a third person belonging to his principal, although coming from the prosecution of the illegal enterprise, he will be held liable to his principal for the money so received.

APPEAL from Galveston. Tried below before Hon. WILLIAM H. STEWART.

*Spencer & Kincaid,* for appellant.

*Hume & Kleberg,* for appellees.

FLY, ASSOCIATE JUSTICE.—Appellant brought three suits, the first against Julius Kauffman and Julius Runge, as partners under the firm name of Kauffman & Runge, for $3085.71, money had and received by them for appellant's use; the second, against Julius Runge, Nicholas Weekes, Edward McCarthy, and Abel H. Pierce, the last three under the firm name of Weekes, McCarthy & Co., and Atwood Violet and Ed. Violet, under the firm name of Atwood Violet & Co., for the sum of $1765.88, money belonging to appellant, had and received by Atwood Violet & Co., which the said Violet & Co. refused to pay appellant because it was claimed by Julius Runge, and had placed the same in the hands of Weekes, McCarthy & Co., to be held by them until the conflicting claims of Runge and appellant could be settled; and the third against Julius Runge, to cancel a certain mortgage given on land, the consideration for which it was alleged grew out of the gambling transactions in regard to wheat and cotton futures. The three cases were consolidated, and being tried by a jury, the following verdict was returned: "We the jury find in favor of the plaintiff Lovejoy two hundred and sixty-five and 88-100 dollars

($265.88) of the money in the registry of the court, and we further find that the deed to the Liberty County lands mentioned in the petition was intended as a mortgage and is illegal; and we find in favor of the defendant fifteen hundred dollars ($1500) of the amount deposited in the registry of the court."

The cause was dismissed as to Weekes, McCarthy & Co., and upon the verdict of the jury, judgment was rendered declaring the mortgage and debt secured by it invalid, in favor of Atwood Violet & Co. for costs, in favor of appellant for $265 of the money in court, and in favor of Kauffman & Runge for $1500 of the money. No complaint is made of any part of the judgment except that allotting the $1500 to Kauffman & Runge.

The facts show that in 1894 appellant employed Kauffman & Runge to buy wheat futures, there being no actual delivery of the wheat, and an account rendered afterwards by them showed that there had been a loss of something over $9000 to appellant, which he secured to Kauffman & Runge by a mortgage on lands in Liberty County. This was on November 20 or 22, 1894. On December 6, 1894, the following receipt was given by Julius Runge: "$3000. Received from Jno. Lovejoy the sum of three thousand dollars, with which to purchase two thousand bales of cotton for 'T' and 'L,' the principal and one-half of the profits to belong to 'T,' and the remainder or the other half of the profits to be placed to credit of Jno. Lovejoy. Purchases and sales to be made at my discretion unless ordered otherwise by John Lovejoy." The transaction as to the cotton was a gambling transaction, no cotton being actually bought or sold. Profits were realized from the cotton transaction. Lovejoy swore that he drew out all the principal and part of the profits, and after March 21, 1895, operated on the profits. In June a statement was sent to Kauffman & Runge showing that the money had been applied to the payment of the debt due on the wheat transactions. The testimony of Lovejoy and Runge is conflicting on what afterwards occurred, Lovejoy claiming that Runge agreed not to apply the money as a credit on the debt, but to put it out in the purchase of second mortgage Atchison bonds to the amount of $1500, and to invest the balance in cotton futures; and Runge swore that it was the understanding between him and Lovejoy when they went into the cotton transaction that the profits, if any, should be credited on his past indebtedness, and the credits were so made. He swore also that the money used in buying the bonds was the property of Kauffman & Runge.

The transactions as to the futures were illegal, and neither party could recover from the other party anything done or promised in carrying out the unlawful enterprises. Seeligson v. Lewis, 65 Texas, 215.

While the law will not aid in the enforcement of such contracts, still if an agent has received money from a third person belonging to his principal, although coming from the prosecution of the illegal enterprise, he will be held liable to his principal for the money so received. Floyd v. Patterson, 72 Texas, 202. When the agent receives the money, he is

responsible by that reason, and it can be no defense for withholding the money from his principal that it arose out of an illegal contract. Mech. on Agency, sec. 526. He is bound, not by reason of the illegal contract, but by reason of his agency. The illegality of the contract from which the money arises in no wise lessens his responsibility as an agent.

If Kauffman & Runge received the profits on the cotton deals from some third party, they would be responsible for the same as agents of appellant, and could only justify their retention of the same on the ground that he had agreed that it should be appropriated to the payment of a debt due by him to them. If he agreed to that application of the money, it would not matter that the debt on which he agreed that it should be credited was illegal. If, however, after the application of the money had been made, Kauffman & Runge agreed to set aside the application and to let appellant have the ownership of the money again, and the $1500 paid to Violet & Co. was a part of it, appellant would be entitled to recover. But if the money was simply an advancement made by Kauffman & Runge out of their own money, then, of course, they should recover.

If, however, Kauffman & Runge in fact did not deal with any third party, and did not receive any money from such third party for appellant, he would have no claim against them for the profits arising out of the gambling transactions which he could enforce, because to do so, he would be compelled to call to his aid the illegal contract in regard to cotton futures. Upon this point the evidence was very obscure, and it does not seem to have been at all considered in the trial of the cause. In order to make out his case, it was incumbent on the plaintiff to show that Kauffman & Runge had received the profits from a third party; in other words, to show that the relation of principal and agent existed; and while there was no direct proof on the subject, it seems to have been assumed that the money was received from a third person. If this assumption was correct, then the court erred in not presenting to the jury the issue as to whether the money placed with Violet & Co., as well as the other profits, was the property of appellant, under the law as hereinbefore indicated. While none of the requested charges, perhaps, were correct propositions of law, under the facts, still they served to call the attention of the court to the true issue, and he should have framed a proper charge. No good purpose would be conserved by a detailed discussion of the different assignments of error. We believe we have sufficiently indicated the proper issues upon which another trial should proceed.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*