## KRACKAU v. ABE B. FREEMAN.

### No. 2332.

Court of Civil Appeals of Texas. Beaumont.
May 26, 1933.

Rehearing Denied May 31, 1933.

R. E. McKie, of San Marcos, for appellant.

J. B. Dibrell, P. E. Campbell, and Wirtz & Weinert, all of Seguin, for appellee.

O'QUINN, Justice.

This suit was brought by Abe B. Freeman, a copartnership composed of Mrs. Emma Freeman, Joe Freeman, H. M. Freeman, and Clarence Freeman, doing business under the name of Abe B. Freeman, against Richard Krackau, to recover upon three promissory notes aggregating the sum of $1,555, together with 6 per cent. interest and 10 per cent. of the amount due as attorney's fees. They also sought to recover $255 upon an open account for storage and insurance on baled cotton, and to foreclose a chattel mortgage alleged to have been executed to secure the payment of said indebtedness.

Defendant answered by general demurrer, general denial, and specially that the notes sued upon were void and unenforceable for the reason that there was no valid, sufficient, or legal consideration for said notes, in that said notes were given for margins upon transactions in cotton futures between plaintiff and defendant, and further specially alleged that plaintiff sold to defendant a certain cotton future contract for 100 bales of cotton, whereby it was not contemplated by the parties that there should be an actual delivery of said cotton; and that there was no bona fide intention that the cotton was to be delivered or accepted by defendant. He further specially answered that the chattel mortgage sought to be foreclosed by plaintiff was given to secure the payment of the notes sued on which were given for margins in said cotton future contract, and was a part of the illegal transaction, and therefore unenforceable. He further alleged that no crop of any nature was included in said mortgage.

Plaintiff and defendant each by supplemental pleadings fully and minutely denied all matters by the other alleged in answer to the original petition and answer.

The case was tried to a jury upon the one special issue as to whether or not the mortgage alleged included defendant's crop, which the jury answered in the negative. Judgment was entered for plaintiff against the defendant for $2,364.28, which covered the principal and interest of the notes, the open account, and attorney's fees. The judgment also foreclosed the mortgage upon the live stock named in the mortgage. From this judgment defendant has appealed.

We deduce from the record the following facts: Abe B. Freeman, the partnership mentioned, was engaged in the mercantile business in the city of Seguin, Guadalupe county, Tex., with H. M. Freeman, its manager. The partnership bought and sold cotton in the carrying on of its mercantile business. The members of the mercantile copartnership also owned in part the Seguin Cotton Compress Company. It was a stock company but was under a separate management from the mercantile business. Joe Freeman was its manager. Appellant, Richard Krackau, was a farmer operating a farm of some 200 acres in said county. He did business with the mercantile partnership. On September 8, 1927, appellant, through H. M. Freeman, a member of said partnership and its manager, borrowed from Abe B. Freeman, partnership, the sum of $1.000, for which he executed his note and delivered to the plaintiff certain cotton warehouse receipts (for cotton stored in the warehouse of the Seguin Cotton Compress Company) to secure the payment of said note. With the $1,000 thus borrowed, appellant, acting through Joe Freeman, a member of the Abe B. Freeman mercantile partnership, and also a member of the cotton compress company and its manager, and who had a personal credit and rating on the New Orleans, La., cotton exchange, bought 100 bales of cotton for January delivery. It was not intended that an actual delivery of said cotton should be made, but that said contract should be liquidated by the payment of margins to the party entitled

according to the fluctuations of the cotton market. September 10, 1927, the cotton market having fallen, it was necessary for appellant to put up $500 as margin, and he borrowed this sum through H. M. Freeman from the Abe B. Freeman partnership, and executed his note for same. This $500 was paid on said cotton future contract by Joe Freeman for appellant. On September 20, 1927, it became necessary for appellant to put up $55 to cover further decline in the cotton prices, and through said H. M. Freeman of said partnership he borrowed this sum from said partnership for which he executed his note. This sum was paid on said cotton contract by Joe Freeman for appellant. After this the market continued to decline and the account was closed out.

While it is alleged in appellant's answer that he bought the 100 bales of cotton (cotton future contract) from appellee, and same is here insisted upon, there is no evidence to support the pleading. All the evidence is that appellee was not engaged in selling cotton futures; that it did not play the market nor become in any way interested in or a party to appellant's cotton future contract, and did not sell to appellant any cotton in any form or manner. In fact, appellant himself admits this to be true. He testified: "I have talked to him (Joe Freeman) about the cotton market several times. I knew that Mr. Freeman was not selling me this cotton himself. I knew that. I knew that he was going to place my order on the cotton exchange and knew that he was going to act for me. He said I didn't need any money; that he would put it up. He never asked anything for his services. I couldn't tell if I agreed to pay anything. I never made no agreement. We didn't talk anything about whether he was doing that as a matter of accommodation. I knew he was just acting as a matter of accommodation for me to buy 100 bales of cotton on the exchange."

So, tersely stated, appellant borrowed the amounts evidenced by his three notes to plaintiff, and, through Joe Freeman, acting as his agent and for his accommodation without compensation, bought cotton futures and lost. He resists the payment of the notes on the grounds that appellee knew when it loaned him the money that he was going to use it in an illegal transaction, and so the loan was tainted with the illegality of the contract for cotton futures. The undisputed evidence shows that while appellee did have knowledge of the use to which appellant was going to put the money borrowed, still appellee did not in any way participate in said transaction, and did not expect or intend to be paid its money through the result of appellant's cotton future deal, but to the contrary loaned the money to appellant, took his notes for same, and required him to deliver to appellee certain cotton warehouse receipts as collateral to secure said loan, and later took appellant's chattel mortgage upon certain live stock as additional security for said debts.

█ Appellant complains that the court erred in refusing to submit to the jury the issue of the illegality of the consideration for which the notes and mortgage were given. This upon the contention, first, that appellee sold the cotton futures to appellant, wherefore the contract was unlawful and void; and, second, that if appellee did not sell the cotton futures to appellant, it furnished him the money with which to buy same, knowing the unlawful use to which the money so furnished was to be put, and hence is not entitled to recover. This contention is not sound, because:

(a) Appellee did not sell the cotton futures to appellant, and did not in any way render itself in pari delicto with appellant in the transaction, and was not expecting, nor did it intend, that its loans to appellant should be repaid with its money illegally acquired by appellant per the cotton futures transaction.

(b) The fact that one loans money to another, knowing at the time that the money loaned is to be used for an unlawful purpose, does not render the loan transaction illegal for, as was said by the Supreme Court, speaking through Judge Harvey of the Commission of Appeals, in Perkins v. Nevill, 58 S.W.(2d) 50, at page 52: "It is fairly well recognized by our courts that even actual knowledge, on the part of the lender, that the borrower intends to put the borrowed money to an unlawful use, does not, of itself, invalidate the loan contract. Labbe v. Corbett, 69 Tex. 503, 6 S. W. 808; McKinney v. Andrews, 41 Tex. 363, 366; Bishop v. Honey, 34 Tex. 245, 252; Lewis v. Alexander, 51 Tex. 578; Bonnie & Co. v. Blankenship (Tex. Civ. App.) 208 S. W. 934; Anheuser-Busch Brewing Ass'n v. Houck (Tex. Civ. App.) 27 S. W. 692, 698; Cleveland v. Taylor, 49 Tex. Civ. App. 496, 108 S. W. 1037. There is as much or more reason for holding, as we do, that the loan contract will not be invalidated by the mere intention or expectation, on the part of the lender, that the loan will be repaid with money illegally acquired by the borrower."

Appellant presents several assignments against the admission and rejection of certain evidence. Our holding above renders the matters presented by these assignments immaterial, and they will not be discussed.

█ Appellant assigns error in the action of the court not giving him credit against the judgment herein for such price as the fifteen bales of cotton by him deposited with appellee as collateral to secure the payment of the notes in question, as could have been realized by the sale of said cotton within a reasonable

time after same was received by appellee. It appears that the cotton was deposited with appellee in September, 1927, and the judgment rendered in May, 1931. The price of cotton had constantly declined from the date of the placing same with appellee as collateral until the date of the judgment. It was estimated to be worth about 24 cents per pound at the time of its being given as collateral and about 9 cents per pound at the time of the judgment. The insistence is that appellee should have disposed of the cotton within a reasonable time after receiving it as collateral, thereby saving much of the loss in price, and that the court should have so determined and should have given appellant credit for such price as the cotton could have thus been sold for. This contention is based upon the facts that the notes were demand notes and that appellee had been demanding payment of same ever since the conclusion of appellant's said cotton future contract, and that in December, 1929, the cotton held by appellee was worth $85 per bale, and that it was the duty of appellee to have sold the cotton and thus save the loss in price as well as storage and insurance charges. Special requested issue No. 2 was presented to the court by appellant submitting these questions: (a) Whether appellee "could at any time after the accrual of the debt claimed against defendant have procured for the cotton deposited as collateral a better price than it will now bring"; and (b) "what sum could plaintiff have procured for said cotton had it been sold within a reasonable time after Sept. 20th, 1927. The same being 8116 lbs. Answer by stating the amount in dollars and cents." This was refused. The assignments are overruled. The record shows that the fifteen bales of cotton were placed in the Seguin Compress and warehouse tickets issued to appellant for same; that he delivered these warehouse tickets to appellee as collateral security for the payment of the notes in question. This amounted to a mortgage of the cotton to secure the notes. It nowhere appears that appellee was given authority, or that any of the parties thought that appellee had any authority, to at any time dispose of the cotton. The legal title to the cotton was in appellant, and he at all times strenuously denied that he owed appellee any sum in the premises. Appellee could not legally dispose of the cotton unless and until it had recovered judgment against appellant for its debt, and a foreclosure of its lien on the cotton, as it has here done. The authorities cited by appellant under this contention, under the facts, are not in point.

No error appearing, the judgment should be affirmed, and it is so ordered.

Affirmed.