**Robert M. NELSON, Appellant,**

v.

**John H. POWELL, Appellee.**

**No. 6973.**

Court of Civil Appeals of Texas.

Beaumont.

Oct. 17, 1968.

Geary, Brice & Lewis, Dallas, for appellant.

No attorney for appellee.

PARKER, Justice.

This is a suit on two promissory notes brought by appellant, Robert M. Nelson, as plaintiff in the trial court, against appellee, John H. Powell, as defendant below. The case was submitted to the jury on special issues. The answers of the jury were favorable to Robert M. Nelson. Upon motion of appellee, the trial court disregarded the findings of the jury and entered judgment that appellant take nothing

against appellee, notwithstanding the verdict.

On August 30, 1960, John H. Powell signed two notes as follows:

$5000.00                                                    Beaumont, Texas   August 30, 1960

I, John H. Powell promise to pay to J. H. Hodges, Sr. of 1648 East Drive, Beaumont, Texas the sum of FIVE THOUSAND and no/100 ($5000.00) Dollars With interest at the rate of six (6%) per cent per annum.

This note is given in consideration and for the valuable consideration of Mr. J. H. Hodges, Sr. advancing to me funds in the above given amount, receipt of which is hereby acknowledged and . confessed, to pay other financial obligations which I have.

This note is payable in monthly installments of One Hundred Fifty and no/100 ($150.00) Dollars each payable at Beaumont, Texas plus interest at the above given rate, with the first installment being due and payable on October 1, 1960 and a like installment of One Hundred Fifty and no/100 ($150.00) Dollars plus interest due on the first day of each succeeding month until the entire amount of both principal and interest are paid in full.

In the event this note is placed in the hands of an attorney for collection I agree to pay an additional amount of 10% of the principal owing as attorney's fees.

WITNESS MY HAND AT BEAUMONT, TEXAS, this the 30th day of August, 1960

_____        XXX   /s/   John H. Powell _____
                                                   John H. Powell
                                                   3080 Willowood Drive
                                                   Beaumont, Texas
                                                   TW 2 0365

\* \* \*

$918.00                                                    Beaumont, Texas   August 30, 1960

For a valuable consideration, I, John H. Powell promise to pay to J. H. Hodges, Sr. on October 15, 1960 the sum of Nine Hundred Eighteen and no/100 ($918.00) Dollars at Beaumont, Texas.

In the event this note is placed in the hands of an attorney for collection, I promise to pay an additional amount of 10% as attorney's fees.

WITNESS MY HAND AT Beaumont, Texas this 30th day of August, 1960.

                                          /s/   John H. Powell _____
                                                   John H. Powell
                                                   3080 Willowood Dr.
                                                   Beaumont, Texas
                                                   TW 20365

Neither of said notes was payable to order or to bearer. They are not negotiable instruments under Art. 5932 § 1(4), Vernon's Ann.Tex.Civ.St. Negotiable Instru-

ments Act. Nelson can recover against Powell subject to the same defenses Powell could have urged against the payee named in said notes. After the 30th of August 1960, Powell paid a total of $1,050.00 on said notes, leaving a balance due and owing on the above mentioned notes of $4,868.00. After said notes were past due, J. H. Hodges, Sr., assigned said notes to appellee, Robert M. Nelson, who on the same day assigned said notes to Louisville State Bank, the consideration in each transaction being $4,600.00. This was in April of 1961. No payments were made to Louisville State Bank. Robert M. Nelson, as endorser, was required to purchase said notes from said bank. Nelson is in the same position as the original payee in said notes, J. H. Hodges, Sr., Powell and J. H. Hodges, Jr., engaged in gambling transactions. The jury found in response to the following numbered special issues:

1. That Defendant John H. Powell received valuable consideration for the execution of the two promissory notes.

2. That Plaintiff Robert M. Nelson received an assignment of the two promissory notes without notice of any flaws or defect therein.

3. That Robert M. Nelson paid valuable consideration for the assignment of the two promissory notes to him.

1a. That Joe Hodges, Jr. threatened the Defendant, John Powell, either directly or indirectly with criminal prosecution, if Powell did not sign the notes.

2a. That such threat did not produce a state of fear in the mind of the Defendant, John Powell.

3a. Issue inquiring whether state of fear induced Defendant to sign notes not answered being conditionally submitted on 2a.

4. That Joe Hodges, Jr. did not threaten the Defendant, John Powell, with acts calculated to jeopardize the Defendant's gainful employment if he did not sign the notes.

5. Not answered, being conditionally submitted on No. 4.

6. Not answered, being conditionally submitted on No. 4 and No. 5.

7. That Joe Hodges, Sr. did not threaten the Defendant, John Powell, with acts calculated to jeopardize the Defendant's gainful employment if he did not sign the notes.

8. Not answered, being conditionally submitted on No. 7.

9. Not answered, being conditionally submitted on No. 7 and No. 8.

10. That Joe Hodges, Jr. did not threaten the Defendant with acts calculated to be harmful to Defendant's marital relations.

11. Not answered, being conditionally submitted on No. 10.

12. Not answered, being conditionally submitted on No. 10 and No. 11.

After the return of a favorable verdict to appellant, appellee filed his motion for judgment non obstante veredicto predicated on the theory that the notes were not enforceable by reason of being connected with a "gambling transaction" participated in by appellee and Hodges, Jr.—not by Hodges, Sr.

Appellant has two points of error:

### POINT ONE

THE TRIAL COURT ERRED IN RENDERING JUDGMENT THAT APPELLANT ROBERT M. NELSON TAKE NOTHING NOTWITHSTANDING THE VERDICT.

### POINT TWO

THE TRIAL COURT ERRED IN RENDERING JUDGMENT THAT APPELLANT ROBERT M. NELSON RECOVER NOTHING BECAUSE SAID APPELLANT SECURED PROPER JURY FINDINGS, SUP-

PORTED BY LEGALLY COMPE-
TENT EVIDENCE, AUTHORIZING
JUDGMENT IN HIS BEHALF.

These points of error will be considered together. In addition to the evidence set forth above, the following evidence is in point. There is no evidence that J. H. Hodges, Sr., ever participated in any gambling transaction. Powell testified that he did not owe any money to Joe Hodges, Jr., but admitted that they had been engaged in gambling transactions. His evidence was that he was threatened in many ways, causing him to sign the two notes. To the contrary, Mr. J. H. Hodges, Sr., testified:

Q. Did Mr. Powell ever say that he owed the money to Joe H. Hodges, Jr.?

A. Oh yes, that's the reason he signed the note.

* * * * * *

Q. Mr. Powell did acknowledge the indebtedness to Mr. Joe H. Hodges, Jr., your, son, is that right?

A. Yes, sir.

Q. And was that indebtedness for the sum of Fifty-nine hundred and eighteen dollars?

A. No, it was for more than that. Mr. Powell gave him Fourteen hundred dollars in cash besides the note.

Q. The same day?

A. Yes.

* * * * * *

Q. Now, did you tell Mr. Powell that you were going to advance some money to Joe H. Hodges, Jr. your son?

A. Yes, sir.

Q. Was that the reason why he made the notes out to you rather than to Joe H. Hodges, Jr.?

A. I imagine so, yes, sir.

* * * * * *

Q. And, this is money that your son would wire to Mr. Powell asking him to place bets here in Beaumont?

A. Yes, sir.

Q. Is that correct?

A. Yes, sir.

Q. And the money that Joe Jr. was contending was owed to him was supposed to have been winnings from those bets, is that right?

A. I don't know about that, Mr. Walker, whether it was winnings or it was a balance of what he had sent. Now, I couldn't say that. He told me that he had sent twelve or fifteen thousand dollars to him within the past thirty days. So, I don't know whether that was the balance or whether that was money that he had or what it was.

Q. Joe, Jr. told you that he had sent Mr. Powell fifteen—what was it?

A. Twelve to fifteen thousand dollars.

Q. Twelve to fifteen thousand dollars?

A. That's right, in the previous thirty days.

Q. Well, how much was he contending the winnings were off of this?

A. Well, the difference between what he had sent him and what was owing to him, which was around Nine Thousand dollars, or to that extent, as far as I can remember.

Q. In other words, as far as you can remember, these gambling operations resulted in loss?

A. Well they did, at that way, yes sir.

Q. Did you ever see any receipts or evidence or anything for this money that was supposed to have been sent Mr. Powell?

A. No, but you could get that at Western Union. It's all on record down there. It was wired.

Q. Have you seen any records to that effect?

A. No, sir.

Q. Now, you stated that you were over in the Gulf Stores—on that one day. Do you know how many times Joe Jr. had talked to Mr. Powell?

A. That day?

Q. That day or any other day concerning these notes?

A. No, he had seen him first before he come to get me. I know that. Then, we went back together and he saw him again and then he went home to write the note and then we went back and he signed them, and that was again—maybe three or four times, I don't know. I was on my way up to the farm and he caught me up there and told me what had happened and asked me to come back to see what I could do about getting Mr. Powell to pay off.

\* \* \* \* \* \*

Q. Well, you had not furnished to Mr. Powell with any money now had you?

A. No, sir.

Q. He didn't owe you any—

A. I furnished him money in this way by giving it to Joe that he should have give to Joe?

Q. I beg your pardon.

A. I gave it to Joe, money that he should have give to Joe. That's the reason the notes were made out to me.

Q. The notes were made out to you for what reason?

A. That I gave Joe the money that he should have paid the money to.

Q. Are you speaking of Nine thousand dollars?

A. I didn't give him all that at that time, no. I gave him about three thousand dollars that day. Later on I give him fifteen hundred, the day we signed those notes. Prior to that I had given him more than that.

Q. Well, actually Mr. Hodges, that money was to cover hot checks, wasn't it?

A. Well, now I can't say for sure, but if you want me to tell you what I think, I would say yes.

Q. What you're saying is, that Joe, Jr., —what he told you was that he didn't have the money to cover the hot checks because Mr. Powell hadn't given him his winnings, isn't that right?

A. That's right.

Also Hodges, Sr., denied that Powell was coerced in any manner into signing the notes. There is evidence to support the findings of the jury. The payee in the notes, J. H. Hodges, Sr., paid out the amount of the notes in cash to J. H. Hodges, Jr. to take care of hot checks the latter issued.

■ J. H. Hodges, Sr., was not in pari delicto to the illegal gambling transactions. In McDaniel v. Tullis, Craig & Co., Tex. Civ.App., 11 S.W.2d 203 (1928, error refused), the court said:

The note evidenced a just and valid debt to appellees. It would not matter that the money was due by appellant in a gambling transaction and that the collection of the money could not have been enforced in the courts, still appellees had no connection with the illegality of the transaction and even with their knowledge of the use to which the money was intended to be applied, they can collect the money lent by them to appellant. It does not matter what the object and intent of appellees were in lending the money; the loan was legal and for a valuable consideration. The money was due Norman & Co. by appellant, it was an accomplished transaction before appellees had any connection with it, and they had nothing to do with the debt in any way.

**170**

See 53 A.L.R.2d, page 367; Seibert v. Sally, Tex.Civ.App., 238 S.W.2d 266 (1951); Murry v. Campbell, Tex.Civ.App., 338 S.W.2d 483 (1960); McDonough v. Zamora, Tex.Civ.App., 338 S.W.2d 507 (1960, error refused, n. r. e.); Futch v. Sanger, Tex.Civ.App., 163 S.W. 597 (1914, error refused); Krackau v. Abe B. Freeman, Tex.Civ.App., 60 S.W.2d 853 (1933, error dismissed); and Perkins v. Nevill, Tex.Com.App., 58 S.W.2d 50 (1933).

Under the above authorities, appellant's two points of error are sustained.

Judgment of the trial court is reversed and judgment here rendered that Robert M. Nelson do have and recover of and from the defendant, John H. Powell, the sum of $5,354.80, together with interest thereon at the rate of 6% per annum from September 20, 1967 and costs of suit. All costs adjudged against appellee, John H. Powell.